Wardlaw, J.
delivered, the opinion of the Court.
We cannot dispose of this case hastily, by sustaining either of the two first grounds which the plaintiff has taken *426 in his appeal from the order granting the rule to show cause. Approving what the Circuit Judge , has said on this subject, we remark further, that the 51st section of the Sheriff’s Act of 1839, by “ the return to every Court of Common Pleas and General Session of the name of every prisoner, and the time and cause of his or her confinement, whether civil or criminal,” which it directs the •Sheriff to make, plainly contemplates an inquiry by the Court into the case of every prisoner. That no advantage has here been sought by any step taken without notice to the plaintiff, and that in this case, the defendant has a right to be heard by Counsel, for the common appearance, which the English practice requires a prisoner too long detained in prison on mesne process, to enter as a condition of obtaining a supersedias, and which the plaintiff’s counsel has supposed this defendant should have entered before an attorney could appear for him, as only such appearance as will authorize the plaintiff to go on against him, that is, appearance by attorney, or appearance after the common bail, John Doe and Richard Roe, instead of substantial bail,which, •according to our practice, was in fact, though not in form, entered by the defendant at the term following his arrest. There is nothing in our institutions which renders unlawful imprisonment, more especially that which is inflicted in the prison of the Court, or by abuse of the process of the Court, less odious to judges here, than by the common law, it has always been to judges in England. If a case of such imprisonment brought to the notice of a Circuit Judge and not relieved by him were again presented to this Court in suitable form, the duty of this Court would be very insufficiently performed, if inquiry were arrested by the objection that the authority of the prisoner had not been given to his advocates. Rather than endure a continuance of the wrong ■done under the seeming sanction of the law, this Court, if it ■could not look upon the appeal as regular, would consider it as a resort by the Circuit Judge himself to this Court for advice, and by such order as might be enforced on Circuit, if not here, would take care that the abuse should be corrected. Returning then to the counsel, who have argued *427 this case in behalf of the defendant, the thanks which a Court should always feel due to counsel who with candor and ability afford aid to the Court in the investigation of a difficult matter, wherein the Court is called upon to act, we will proceed to inquire whether the defendant is entitled to the supersedias or discharge which is prayed. for him.
If a defendant imprisoned under mesne process requiring bail, whether he never gave bail, or having given it had been surrendered, had no summary mode of relief, he might, under the practice of the English Courts, have been greatly oppressed; the declaration might have been long delayed and no danger of non pros, have been incurred because there was no appearance, or if there was an appearance, and the prisoner even had opportunity for making the necessary inquiries, judgment of non pros, might have been avoided by leave obtained' of further time to declare ; after declaration, trial might have been delayed ; after trial, judgment delayed, and after judgment no writ of execution be sued out; the defendant all the while languishing in prison, or some other writ, and not a ca. sa. be sued, and so the body be held whilst the plaintiff sought satisfaction from the lands or goods. There are some terms employed in the English rules of Court hereafter noticed, which suggest the opinion that before any of those rules, the Courts at Westminster, under the regulations which they adopted for the government of their several prisons and their course of practice, interposed in some way to prevent the unnecessary oppression of prisoners. But I have found in the oldest books of practice which I have exaimed, no express,authority for saying that there was such interposition before those rules. No act of parliament was passed on the subject, but the imprisonment had in the prison of each Court, or by its process, seems to have been considered fit matter to be regulated by the Court itself.
At Mich, term, 1654, during the protectorate of Cromwell, the King’s Bench and Common Pleas each made a rule, in effect, providing that a defendant imprisoned in the Court or elsewhere, under the mesne process of the Court, *428 should be discharged from imprisonment at the end of the second term upon common bail, if the plaintiff should not sooner declare against him ; the Common Pleas expressly providing that the discharge should be by supersedeas.—In 1661, the Stat. of 13 Chs. 2, Stat. 2, ch. 2, entitled “an Act for prevention of vexations and oppressions by arrests, and of delays in suits at law,” was passed (made of force in this State, 2 Stat. 513) for want of a declaration before the end of the term made after the appearance; and the 5th provides for bringing to the bar of the Court, by habeas corpus, a prisoner in the Fleet, that he may appear and the plaintiff may declare against him, so as to have judgment by nil dic.it, if no plea should be entered — “ the charge in Court by declaration, to be a good cause of detention of such prisoner, from which he shall not be discharged without a lawful supersedeas or rule of Court.” Soon afterwards, the Court of Common Pleas, to conform its practice to this statute by rule, Hil. Term, 14 and 15 Chs. 2, (1662,) reciting that “many persons, under mesne process from this Court, have been long detained, as well in the custody of Sheriffs and goalers as in the prison of the Fleet, without any proceedings against them; to prevent unjust vexations,” ordered, inter alia, that if a prisoner in the Fleet be not brought to the bar and declared against, before the end of the second term after his imprisonment, he should be discharged by svpersedias upon common appearance ; whereupon, the plaintiff might declare the next term after such appearance or supersidias granted, an additional term for declaring against a prisoner in custody of a Sheriff being allowed. At Easter Term, 16 Chs. 2, 1664, the King’s Bench, by rule, regulated the notice which should be given to the plaintiff of an application for the discharge of a prisoner, and ordered that a prisoner, “ against whom a prosecution hath been within three terms next preceding,” shall be discharged at the peril of the Attorney who shall procure the discharge.
In 1692, by Stat. 4 and 5 W. & M. c. 21, (made of force in this State, 2 Stat. 537,) the Parliament, reciting that by the practice of the respective Courts of Record at *429 Westminster, a prisoner, if not removed by writ of habeas corpus, to be charged in the Court with a declaration, before the end of two terms, is discharged upon a common bail or appearance by Attorney ; enacted, that if a defendant be in custody for want of bail, the plaintiff may, before the end of the term after the writ is returnable, declare against the prisoner, and shall cause a copy of the declaration to be delivered to the prisoner or to his goaler : to which the defendant shall plead or the plaintiff have judgment in the same manner as if the defendant had appeared in Court. In the King’s Bench, it shall be alleged in custody of which Sheriff or other officer the prisoner is, “ which shall be as effectual as an allegation, that he was in custody of the Marshal of the Marshalsea.” This staC ute was intended for the relief of plaintiffs, but did not take away the old mode of proceeding, if they chose to take the trouble and expense of a habeas corpus. To conform their practice to this statute, at Easter Term, 5 W. & M. 1693, the King’s Bench and Common Pleas both made rules concerning declarations against prisoners, which again provided, that a prisoner might be discharged if there was no declaration before the end of the term after that under which he was taken, was returnable ; the C. P. says, that “ he shall be discharged upon the entry of his appearance with the proper officer, by writ of supersedeas, made by him accordiug to the ancient practice of this Court.”
At Trinity Term, 9 or 3, 1697, tiie K. B. by rule, ordered, that if judgment be given against a defendant in the actual custody of the marshal, and he be not charged in execution, before the end of the second term after judgment obtained, common bail should be filed for him after notice, if no writ of error be pending. By rule, T. Term, 6 Ann, 1707, in K. B. a supersedeas, for want of a declaration before the end of the second term, may be made for a defendant detained in custody of a Sheriff after escape from the Marshalsea. In K. B. all of the preceding provisions were again explicitly repeated, with slight modifications, at Trin. Term, 2 Geo. 1, 1716, when a defendant in prison under the mesne process of the Court, was per *430 mitted “to file common bail or sue out a supersedeas, according to the course of the Court,” for his discharge out of custody, either for want of a declaration within two-terms, for want of proceeding to trial or judgment within three terms, or for want ®f charging in execution within two terms. In C. P. 8 Geo. 1, 1722, a rule, reciting that “ many doubts had arisen on the rules for discharging prisoners in the Fleet and County gaols,” directs, that a prisoner under the mesne process of the Court, by arrest or surrender, may be discharged by supersedeas for want of' a declaration, for want of proceeding to trial or judgment, or for want of charging in execution within certain periods, the same as those fixed in the last mentioned rule of" the King’s Bench : except that, perhaps, there may sometimes hare been a difference between the two Courts as to-including the first term in the reckoning of terms allowed. At Trim 5 Geo. 2, 1724, a rule of C. P. declared that a prisoner, discharged or ordered to be discharged by super-sedeas, for want of prosecution, shall not be held to any other than common bail in an action upon the judgment obtained in the former cause.
Thus stood the rules of the Courts of Westminster on this; subject, at the time when it hais been supposed they were-adopted here. Have they been adopted 1 The early judicial! history of this State cannot be traced upon our statute books,. An important “ Act for the better regulating Courts of justice,” passed 1719-20, has been entirely lost. (3 Stat. 99.) Many regulations established or altered by the Lords Proprietors, under the Proprietory Government, and afterwards by the Crown, through letters patent and repeals of Provincial Statutes, are not noticed in our legislative proceedings.— From the earliest time, a general Court sat in Charleston, which, in 1734, (see 7 Stat. 18,) was composed of a chief" justice and two assistants. In 1737, (7 Stat. 90,) the Court, of Common Pleas, and the justices thereof, were expressly vested with all the powers which the Court of Common Pleas,, at Westminster, and the justices thereof, might exercise.. In. 1768, 7 Stat. 97, Circuit Courts, intended to proceed after the; *431 manner of the Courts of Assize and Nisi Prius, in England, were established: and in the 3d Sect, of the Act, power to make reasonable rules and orders, is given to the said Courts; and it is enacted, that “ the practice and proceedings in the said Courts, respectively, shall be as nearly similar as maybe to those [of the Court] now held in Charleston, and to those [of] the Courts holden in Great Britain by his Majesty’s justices of assize, Oyer <fc Terminer and General Goal Delivery, and also of nisi prius — provided that nothing herein •contained, shall extend or be construed to put in force any Statute of Great Britain, which is not otherwise of force in this province.” In 1759-7 Stat. 253, the same complete and ■final jurisdiction was given to each of the Circuit Courts, which the Courts [Court] in Charleston possessed, “ according to the customs, usages, and practice of the said Courts” in Charleston; and the Courts, now held, derive their authority from this Act, and subsequent amendments of it.
In a collection of the Rules of Court, then of force in South ■Carolina, which was printed in 1796, and is the earliest record now extant of Rules of Court in this State, are 24 rules established 4th July, 1758, by the Judges of the General Court at Charleston, then subsisting. Nothing in them is said of supersedeas or discharge of prisoners, but the 24th is this. “ In all other cases, wherein no particular rules are herein before set down, the same method and practice, as in the Court of Common Pleas at Westminster, shall be used and practiced here, so far as the same be not repugnant or contrary to the above rules.” The 61st of the rules, made 1st July, 1800; the 81st of the rules, made 7th May, 1814; and the 89th of the rules, adopted Dec. 1837, are all in effect the same as the foregoing 24th rule of 1758. The method and practice of the Court of Common Pleas at Westminster, uninfluenced by changes which have grown out of statutes never made of force here, and not inconsistent with the laws of- this State, are then to regulate the practice of our Courts, in all cases not provided for by our legislation, rules of Court or settled practice. The decisions of the English ' Courts may be looked to, to ascertain what their practice, uninfluenced as above, was and is; and the rules of the Common Pleas at Westminster, especially those prevailing in 1758, -subject to the same qualifications as practice made otherwise evident, are authoritative declarations of their practice.
Our prison bound Acts and insolvent debtors Acts, have been supposed .to render altogether unnecessary here, the practice which' was adopted in England, to relieve prisoners *432 under mesne process from vexatious detentions. But in favor of liberty, they should be construed as cumulative remedies, not denying prisoners any modes of relief, which before existed and have not been repealed. Besides, cases may be imagined, not only of extreme obstinacy in a debtor, who refuses to surrender his all to a creditor,-(as the defendant here is said to do,) but of "the chance of relief under our remedial statutes lost, and a defendant greatly oppressed by the delay of a plaintiff. Notwithstanding any obstinacy, or any delay of a debtor, or any circumstance which may have deprived him of the. benefit of our statutes — should a plaintiff be permitted, after judgment, to hold the defendant for want of bail under mesne process in jail, refusing to acknowledge the actual satisfaction which the body is held by the law to give ? If this may be done after the second term, what limit, without the practice of the Common Pleas at Westminster, is there, short of twenty years, which raises the presumption of satisfaction?
So far as the rules of the Courts of Westminster mentioned above may apply to discharges for want of declaration, or for want of proceeding to trial or judgment within three terms, we are not now called to consider them; but it may be observed, in passing, that in these cases their adoption by our Courts can rarely be desired. Our statutes and rules of Court,, made in general terms, which embrace prisoners as well as all other defendants, concerning the time and mode of a defendants appearing, and of a plaintiff’s declaring, have perhaps rendered wholly inapplicable the Statute of William and Mary concerning declarations against prisoners, and in a great measure superseded the practice of discharging a prisoner for want of declaration before the end of the term next after the term to which the writ was returnable. The defendant with us may always appear by attorney, whether he has given bail or no; his appearance is not needed to authorize a declaration : if he has appeared, he may, under the Statute 2 Charles 2, and our Act of 1791, (7 Stat. 263,) obtain, by proper caution, his judgment of non pros., and discharge under ■that, if plaintiff have not declared before the end of the term succeeding that to which the writ is returnable; unless the plaintiff should have obtained further time to declare, which the Court in England does not generally grant against a prisoner.—2 Sell. Pr. 29. If the defendant have not appeared, or have been wanting in diligence, a supersedeas may however, still be necessary for his relief from unjust detention in prison, without a declaration. In like manner, our usual course of proceeding con templates such supervisory control by the Court *433 over the cases in Court, that a plaintiff could rarely neglect to proceed for three terms against a defendant who had appeared, without good excuse or danger of non pros: but still in cases of poor prisoners, who have not entered appearance, and in extraordinary cases of those who have (and these are the cases where oppression is most to be feared,) the super-sedeas in discharge of the defendant, for want of prosecution, may be necessary.
The necessity of the discharge for want of charging in execution, is most apparent here, although that case was the last which received the attention of the English Courts.
The plaintiff in the case before us says that the defendant should not be discharged — because, although supersediable for want of charging in execution, he was regularly charged in execution before the supersedeas was ordered.
In behalf of the defendant, it is said that the capias ad satisfaciendum, with which he is supposed to have been charged, was too late, because the defendant was in jail in the same case when the ft. fa. was lodged, and as the plaintiff could not have at the same time the body and execution against the goods, the ft. fa. was void, and not a sufficient process to keep alive the judgment, so as to authorize the suing out of acó;, sa. The ground of this application, on part of the defendant, is, that the plaintiff did not take the body in execution in time, and this cannot be sustained by assuming that he had the body. The body was imprisoned, but it was not taken in execution. “ It is no objection to a ft. fa. that the defendant is in custody in the action, if he has not been charged in execution.”—Lush’s Pr. 500. It is the plaintiff’s right to choose in execution between the body and goods, and this defendant, by neglect to give bail, cannot take away this choice, at least for a reasonable time.
The plaintiff further objects that the ca. sa. having been lodged six years after the entry of judgment, and there having been no previous ca. sa., the ca. sa. was not, under our Act of 1827, (6 Stat. 324,) a renewal of the ft. fa.; that only an alias or pluries ft. fa. could have been such renewal, and that therefore the ca. sa. is irregular, and the body of the defendant has not been charged in execution. The Act of 1827, however, seems to have been plainly intended to substitute other periods of time for those within which theretofore the active energy and the renewability, without sei. fa. of final process had been limited — to wit, four years,- and until the next term thereafter for the time prior to the end of the first term after the teste, and seven years and until the rule term thereafter for a year and a day after the end of the first term *434 following the teste. According to the phrasd used in our cases of Primrose v. Becket, 3 McC. 418, and Jackson v. Mayrant, 3 McC. 360, both decided in 1826, a ca. sa. may be a renewal of a fi. fa.; and there was therefore no irregularity in continuing process of execution within the seven years, by suing out a ca. sa. after the return of the fi. fa.
The chief question then remains, which has divided the Court, Had the plaintiff the right, after the defendant was supersediable, and after the rule to show cause why the super-sedeas should not be granted, had been served, to deprive the defendant of his discharge, by lodging a ca. sa. ?
Lodging a ca. sa. with the Sheriff, whose prisoner the defendant is, is, under our practice, a sufficient charging in execution — the only mode known to us. It is the mode used in England whenever the prisoner is in the Fleet or the King’s Bench prison, (with some diversities of proceeding, according as he is confined at the suit of the plaintiff or otherwise,) a committitur is obtained from the Court by the plaintiff, and lodged for detention of the prisoner, in order to charge him in execution.
It is certainly true, that as the practice is now in England, if a prisoner be not charged in execution within two terms, the trial term inclusive, a committitur will not be granted afterwards — of course a ca. sa., where the defendant is in the hands of a Sheriff and not in the prison of the Court, ought not to be afterwards issued ; and so it is laid down by Leigh in his Modern Practice, page 651 ; “ if the plaintiff lets the time pass by, the defendant becomes absolutely entitled to his discharge from imprisonment with respect to that judgment at any time afterwards.” Reference is made to Mult and Howell, 2 Dowl. P. C. 71, and Colburn v. Hall, 5 D. P. C. 534. Without being able to find Dowland’s points of Practice in the Practice Court, I am persuaded that the cases depend upon late Statutes and rules of Court in England not at all obligatory upon us, after the great changes which were introduced by the uniformity of Process Act, 2 W. 4, c. 39. At Hil. Term, 2 W. 4, general rules wese adopted under which the Marshal of (he King’s prison and the Warden of the Fleet were required *435 to give notice to the Marshal or Warden of any proposal of compromise or other special matter which authorized the detention of a prisoner otherwise supersediable, and it is ordered that “ all prisoners who have been or shall be in custody of the Marshal or Warden, for the space of one calendar month after they are supersediable, although not superseded, shall be forthwith discharged out of the King’s Bench or Fleet prison as to all such actions in which they have been or shall be supersediable.” These rules made the duty of discharging after the month imperative. See Leigh's Pr., 654 ; 14 Pctersd. Abridgt. 763, note. Neither of these rules applied to the case of a prisoner in the custody of a Sheriff, but to their influence, I doubt not, are to be ascribed the cases above cited from Dowland’s F. C., and the only modern case 1 have seen, where a defendant actually charged in execution was discharged because he was not charged in due time, is the case of Bone v. Baker, 1 Adol. and El., 860, 1834; the defendant in custody of a Sheriff, after surrender was charged in execution by ca, sa. after two terms, and was discharged. There is a case Webb vs. Dorwill, Barnes notes 400, 29 Geo. 2, 1756, where the plaintiff’s agent, after he had received a Judge’s summons for a supersedias, in the time allowed to him to write to his client, declared, proceeded to judgment and charged the defendant in execution by ca. sa.;' the Court holding the proceedings subsequent to the time of defendant’s being supersediable and having applied for a supersedias, to be irregular, set aside the judgment and ca. sa,, and discharged the defendant. This case rests probably upon the ground that the plaintiff’s agent had abused the indulgence of the Court, and is supposed to be irreconcileable with another case, Clayton v. Staff, Barnes 394, 11 Geo. 2, 1738, in which the Court granted at the peril of the plaintiff a committitur for a defendant, for whom an order of supersedias had been made out at the preceding term, which Was lodged with the Warden and appearance entered ; but the defendant had not allowed the supersidias till after habeas corpus had been lodged. This last Was however probably a case where supersedias had *436 been ordered for want of proceeding, and the defendant, who, if he had gone at large, would after judgment have been subject to arrest under a ca. sa., was held liable to be charged in execution whilst he remained in prison of his own accord.
The case of Gibbes v. Tupigny de Maily, Barnes, 398, and other cases cited in the case from Term Rep., and the case from Burrow, below mentioned, leave however no doubt, that at one time the maxim, once supersediable always supersediable, was carried to such lengths in the Court of Common Pleas, that if a defendant was once supersediable, his subsequent confinement was considered unlawful, and ho process for detention of him, by the same plaintiff or another, was held to be regular. The gross injustice of this, in the case of other plaintiffs, who were thus prevented from proceeding against a defendant supersediable, who remained in custody either as against a person at large or against a prisoner, was exposed and corrected in the case of Hubilins v. Kenrick, 2 Burr. 1048, in 1760. Afterwards, a further limitation of the maxim gained ground in all of the Courts at Westminster, as will be seen in the case of Rose v. Christfield, 1 Term Rep. 591, where the case of the London Assurance Co. v. Palmer was cited by counsel, and the case of Fay v. Percy, in C. P. 1768, was cited by Buller, J. who said “ the rule, that where a person is once supersediable he is always so, must be understood with this qualification, that he is only supersediable as long as he remains in the same custody, and under tne same process. For the moment the nature of the custody is changed, the rule ceases. Therefor© if the prisoner be supersediable for any irregularity, as for want of a demand of plea, he cannot take advantage of that after he is charged in execution, supposing he has any opportunity of applying on that ground before he is charged in execution. Here the defendant had ample time.” The delivery of a declaration, after the time limited, does not cure the default of not declaring in timebut the charging in execution cures either the default of not declaring in time, or of not charging in time, if opportunity of the prisoner’s *437 applying for such default, had been previously allowed — for the charging in execution changes the process, and the nature of the custody, which declaring does not. The charging in execution involves a new order from the Court, alters the responsibility of the gaoler, and affects a new relation between plaintiff and defendant, and between either of them and third persons. The right which the plaintiff, thus after judgment, exercises of taking his debtor’s body in satisfaction, would exist notwithstanding a supersedeas for want of declaration, but would be wholly taken away by a supersedeas for want of charging in execution. Most of the books of practice, to which we usually resort, seem ,lo consider a defendant, once charged in execution, as no longer superse-diable for any previous default of the plaintiff. (See 2 Sell. Pra. 40 ; 2 rule Pr. 121. Semb. contra, 1 Tidd. Pr. 328, citing only the rule of Court, George 1.) This we hold to be-conformable to the practice, as it was expounded, when adopted by us. It is reasonable, for if the defendant have, after a short time, subsequent to judgment, the right of putting the plaintiff to his election, whether to take the body in execution, or permit it to be discharged, the plaintiff ought not to be concluded of his election, so long as the defendant delays his application. Furthermore, the right of plaintiff to.have the body after judgment, is undeniable, notwithstanding there may have been a supersedeas before judgment, and although a supersedeas, after judgment, deprives the plaintiff of the right of arresting the defendant again in that action, or by mesne process in debt upon that judgment, after judgment ip a second action, he may again have a ca. sa. (Cowp. 72.) Why should this circuity be resorted to, so productive of nn, necessary delay and vexatious expence, and so much discountenanced by our statutes of 1815, (6 Stat. 5,) and 1827, (6 Stat. 324,) and by our case of Lee & Giles, 1 Bail, 449 ? In New York, where,- by statute, the discharge of a defendant in. prison, charged in execution within three months after judgment, is provided for, it has been held that the intent was to enable the defendant to put the plaintiff to his election between the body and the estate of the debtor; and that a ca. sa. lodged by the plaintiff, after service of the notice, to show cause, would deprive the defendant of his right to be superseded. Brontinghanrüs case, Coleman’s ed. 47; Minturn v. Phelps, 3 John. 441.
It is said, that the right of defendant to be superseded for want of charging in execution, is illusory, and the *438 rule of the Court is insulted, if, after notice of the defendant’s application, the plaintiff be permitted to do that which shall defeat the application. But if the defendant’s right is only to be charged or to be discharged, he has obtained it when he has been charged, and is in just the same situation he would have been in if he had been charged sooner. Ofi the other hand, if, after the plaintiff has made the election required of him, by lodging his ca. sa. the defendant be superseded, the plaintiff may be put in a much worse condition than that he was in ; all the advantages which the continued restraint of his debtor’s person might have afforded, will be taken from him ; his fi. fa. may possibly be no longer issuable or renewable without sci.fa. | and it may happen, (as has been suggested in the case be* fore us,) that the defendant, with money sufficient to pay the debt, which a fi. fa. had not been able to reach, would leave the State under no fear of arrest by ca. sa. in the present action, or by mesne process founded thereon, and little apprehension from process of execution in an action of debt on this judgment.
All proper indulgence to such unfortunate debtors as will avail themselves of it, seems to be given by the practice we have adopted in a matter to which attention has not heretofore been directed in this State. If both parties here are to be supposed to have known the law, the miscarriage of the defendant’s application must be attributed to' his own delay,
It therefore' appears to this Court, that the defendant, having been regularly charged in execution, notwithstand* ing he was supersedeable, is no longer entitled to a super-sedeas : and the motion, in behalf of the defendant, is dismissed.
Richardson, J, and ErosT, .T, concurred.
Withers, J. absent.